Patrick A. Martinez (SBN: 328452)
UFW Foundation
1100 N. Ventura Rd., Ste. 107,
Oxnard, CA 93030
Telephone: (323) 388-0325
Email: patrickm@ufwfoundation.org

Katherine P. Tello (SBN: 361169)
UFW Foundation
917 H St. Ste. 200,
Bakersfield, CA 93304
Telephone: (323) 388-0311
Email: ktello@ufwfoundation.org

Attorneys for Petitioner

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| GARY ALDAIR ESTRADA GARACHE,<br><br>Petitioner,<br><br>v.<br><br>MARKWAYNE MULLIN, Secretary, Department of Homeland Security ("DHS"); TODD BLANCHE, Attorney General of the United States; DAVID J. VENTURELLA, Acting Director, Immigration and Customs Enforcement ("ICE"); THOMAS GILES, Acting Director, Immigration and Customs Enforcement Los Angeles Field Office, Enforcement and Removal Operations; FERETI SEMAIA, Warden of ADELANTO ICE Processing Center; EXECUTIVE OFFICE FOR IMMIGRATION REVIEW; DHS; ICE; and DOES 1-15,<br><br>Respondents. | CASE NO.<br><br>**VERIFIED PETITION FOR DECLARATORY RELIEF AND WRIT OF HABEAS CORPUS**<br><br>**[28 U.S.C. § 2241]**<br><br>**<u>FILED CONCURRENTLY WITH:</u> DECLARATIONS OF PETITIONER AND HIS ATTORNEYS**<br><br>**Petitioner's A#: 241-908-263** |

## INTRODUCTION

1. Petitioner, GARY ALDAIR ESTRADA GARACHE, is in the custody of Respondents, who have him unlawfully detained at their Adelanto ICE Processing Facility in Adelanto, CA. U.S. Immigration and Customs Enforcement ("ICE") arrested Petitioner in Santa Maria, CA on or about July 06, 2026. Petitioner was arrested by Respondents under the auspices of Petitioner having a final removal order, even though he actually has a pending appeal which stays the immigration judge's decision. Petitioner brings this action at the earliest possible date.

2. Through this Verified Petition for Declaratory Relief and Writ of Habeas Corpus, Petitioner seeks release from Respondents' custody, because Respondents have unlawfully seized and incarcerated him, in violation of the Immigration and Nationality Act ("INA"), the Administrative Procedures Act ("APA"), and the U.S. Constitution.

## PARTIES

**Petitioner**

3. Petitioner, Gary Aldair Estrada Garache, is a Nicaraguan national. On or around October 15, 2022, Petitioner entered the United States without inspection. U.S. Customs and Border Protection ("CBP") held him in custody before releasing him through a grant of parole. Respondents subsequently issued Petitioner a notice to appear in removal proceedings. Petitioner was also referred for ongoing reporting through with Intensive Supervision Appearance Program ("ISAP") office. Thereafter, Petitioner's wife filed an immigrant relative petition for him, and Petitioner duly filed an application for adjustment of status, on the basis of an immigrant relative petition previously filed by his U.S. citizen wife. His application for adjustment of status remains pending before U.S. Citizenship and Immigration Services ("USCIS"). From 2022 until the time of his arrest, Petitioner was living and working in California. Petitioner was complying with his reporting obligations and attending his immigration court hearings. Petitioner has no criminal

history. A removal order was entered by the immigration court, but Petitioner filed a timely appeal with the BIA which remains pending. Nevertheless, on July 06, 2026, Respondents arrested Petitioner without a warrant, notice or an opportunity to respond, indicating that they were taking him into custody because he has a final removal order, even though he has a pending BIA appeal which stays his removal order. After arresting him on July 06, 2026, Respondents have to date not made a determination whether he is a flight risk or a danger and have set no bond.

**Respondents**

4. Respondent MARKWAYNE MULLIN is the Secretary of the U.S. Department of Homeland Security ("DHS"). Mr. Mullin is responsible for the implementation and enforcement of the INA and oversees ICE, the agency responsible for Petitioner's detention. Mr. Mullin has ultimate custodial authority over Petitioner. He is sued in his official capacity.

5. Respondent TODD BLANCHE is the Attorney General of the United States. He is responsible for the U.S. Department of Justice ("DOJ"), of which the Executive Office for Immigration Review ("EOIR"), and the Board of Immigration Appeals ("BIA") and the immigration court system it operates, is a component agency. He is sued in his official capacity.

6. Respondent DAVID J. VENTURELLA is the Acting Director of ICE, a federal law enforcement agency within DHS. ICE's responsibilities include operating the immigration detention system. In his capacity as ICE Acting Director, Mr. Venturella exercises control over and is a custodian of persons held at ICE facilities nationally. He is Petitioner's immediate custodian and is responsible for Petitioner's detention. He is sued in his official capacity.

7. Respondent THOMAS GILES is the Acting Director of the Los Angeles Field Office of ICE's Enforcement and Removal Operations ("ERO") division. As such, he is the custodian of all persons held at the ICE facilities within the Los Angeles Field Office Area of

Responsibility. He is Petitioner's immediate custodian and is responsible for Petitioner's detention. He is sued in his official capacity.

8. Respondent FERETI SEMAIA is the Warden of the Adelanto ICE Processing Facility, a private for-profit detention facility owned and operated by The GEO Group, that contracts with ICE to detain individuals suspected of civil immigration violations. Mr. Semaia is Petitioner's immediate physical custodian. He is sued in his official capacity.

9. Respondent EXECUTIVE OFFICE FOR IMMIGRATION REVIEW ("EOIR") is the federal agency within the Department of Justice responsible for implementing the INA in removal proceedings, including for custody redeterminations or bond hearings.

10. Respondent DEPARTMENT OF HOMELAND SECURITY ("DHS") is the federal agency responsible for implementing and enforcing the INA, including the detention and removal of noncitizens.

11. Respondent IMMIGRATION AND CUSTOMS ENFORCEMENT ("ICE") is the agency within DHS responsible for implementing and enforcing the INA, including the detention and removal of noncitizens.

12. Respondents DOES 1-15 are, on information and belief, officers of the United States, federal agencies, and/or other individuals or entities responsible in some way for conduct complained about herein. Petitioner will seek leave to amend this Petition to join said DOES as Respondents in this action, when and if their true identities and capacities are ascertained.

## JURISDICTION AND VENUE

13. This Court has jurisdiction over this action. Jurisdiction is proper and relief is available pursuant to 28 U.S.C. § 1331 (federal question), 28 U.S.C. § 1346 (original jurisdiction), 5 U.S.C. § 702 (waiver of sovereign immunity), 28 U.S.C. § 2241 (habeas corpus jurisdiction), Article I, Section 9, clause 2 of the Constitution (Suspension Clause), the Fourth and

Fifth Amendments to the Constitution, and 5 U.S.C. §§ 701-706 (Administrative Procedure Act).

14. This Court may grant relief pursuant to 28 U.S.C. § 2241, the Declaratory Judgment Act, 28 U.S.C. § 2201 et seq., and the All Writs Act, 28 U.S.C. § 1651.

15. Venue is in this Court pursuant to 28 U.S.C. § 1391(e) because Respondents are employees, officers, and agencies of the United States, and because a substantial part of the events or omissions giving rise to the claims occurred in San Bernardino County, in the Central District of California.

16. Further, pursuant to *Braden v. 30th Judicial Circuit Court of Kentucky*, 410 U.S. 484, 493-500 (1973), venue lies in the United States District Court for the Central District of California, the judicial district in which Petitioner is currently detained, as Petitioner is detained at Respondents' facility in San Bernardino County, CA.

## LEGAL FRAMEWORKS

### Habeas Corpus

17. The Court must grant a petition for writ of habeas corpus or order Respondents to show cause "forthwith," unless a petitioner is not entitled to relief. 28 U.S.C. § 2243. If an order to show cause is issued, Respondents must file a return "within three days unless for good cause additional time, not exceeding twenty days, is allowed." *Id.*

19. Habeas corpus is "perhaps the most important writ known to the constitutional law … affording as it does a swift and imperative remedy in all cases of illegal restraint or confinement." *Fay v. Noia*, 372 U.S. 391, 400 (1963). "The application for the writ usurps the attention and displaces the calendar of the judge or justice who entertains it and receives prompt action from him within the four corners of the application." *Yong v. I.N.S.*, 208 F.3d 1116, 1120 (9th Cir. 2000) (citation omitted).

20. Petitioner is "in custody" for the purpose of 8 U.S.C. § 2241 because Petitioner is

arrested and detained by Respondents and is under the direct control of Respondents.

**United States Constitution**

21. The Constitution establishes due process rights for "all 'persons' within the United States, including [noncitizens], whether their presence here is lawful, unlawful, temporary, or permanent." *Hernandez v. Sessions*, 872 F.3d 976, 990 (9th Cir. 2017) (quoting *Zadvydas v. Davis*, 533 U.S. 678, 693 (2001)). These due process rights are both substantive and procedural.

22. "The touchstone of due process is protection of the individual against arbitrary action of government," *Wolff v. McDonnell*, 418 U.S. 539, 558 (1974), including "the exercise of power without any reasonable justification in the service of a legitimate government objective," *Cnty. of Sacramento v. Lewis*, 523 U.S. 833, 846 (1998). These protections extend to noncitizens facing detention, as "[i]n our society liberty is the norm, and detention prior to trial or without trial is the carefully limited exception." *United States v. Salerno*, 481 U.S. 739, 755 (1987). Accordingly, "[f]reedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that [the Due Process] Clause protects." *Zadvydas*, 533 U.S. at 690.

23. Substantive due process thus requires that all forms of civil detention—including immigration detention—bear a "reasonable relation" to a non-punitive purpose. *See Jackson v. Indiana*, 406 U.S. 715, 738 (1972). The Supreme Court has recognized only two permissible non-punitive purposes for immigration detention: ensuring a noncitizen's appearance at immigration proceedings and preventing danger to the community. *Zadvydas*, 533 U.S. at 690–92; *see also Demore v. Kim*, 538 U.S. 510 at 519–20, 527–28, 31 (2003).

24. The procedural component of the Due Process Clause prohibits the government from imposing even permissible physical restraints without adequate procedural safeguards. Generally, "the Constitution requires some kind of a hearing *before* the State deprives a person of

liberty or property." *Zinermon v. Burch*, 494 U.S. 113, 127 (1990). This is so even in cases where that freedom is lawfully revocable. *See Hurd v. D.C., Gov't*, 864 F.3d at 683 (citing *Young v. Harper*, 520 U.S. 143, 152 (1997) (re-detention after pre-parole conditional supervision requires pre-deprivation hearing)); *Gagnon v. Scarpelli*, 411 U.S. 778, 782 (1973) (same, in probation context); *Morrissey v. Brewer*, 408 U.S. 471 (1972) (same, in parole context).

25. After an initial release from custody on conditions, even a person paroled following a conviction for a criminal offense for which they may lawfully have remained incarcerated has a protected liberty interest in that conditional release. *Morrissey*, 408 U.S. at 482. As the Supreme Court recognized, "[t]he parolee has relied on at least an implicit promise that parole will be revoked only if he fails to live up to the parole conditions." *Id.* "By whatever name, the liberty is valuable and must be seen within the protection of the [Constitution]." *Id.*

26. This reasoning applies with equal if not greater force to people released from civil immigration detention at the border, like Petitioner. After all, noncitizens living in the United States have a protected liberty interest in their ongoing freedom from confinement. *See Zadvydas*, 533 U.S. at 690. And "[g]iven the civil context [of immigration detention], [the] liberty interest [of noncitizens released from custody] is arguably greater than the interest of parolees." *Ortega v. Bonnar*, 415 F. Supp. 3d 963, 970 (N.D. Cal. 2019).

**Immigration and Naturalization Act (INA)**

27. Noncitizens in immigration proceedings are entitled to due process under the Fifth Amendment of the U.S. Constitution. *Reno v. Flores*, 507 U.S. 292, 306 (1993). As the Supreme Court has held, a noncitizen's interest in deportation proceedings "is, without question, a weighty one" because "[]he stands to lose the right 'to stay and live and work in this land of freedom.'" *Landon v. Plasencia*, 459 U.S. 21, 34 (1982) (quoting *Bridges v. Wixon*, 326 U.S. 135, 154 (1945)).

28. Removal proceedings described in Section 240 of the INA are used to determine whether individuals, such as Petitioner, should be removed from the United States. *See* 8 U.S.C. § 1229(a). Noncitizens in Section 240 proceedings are entitled to full hearings in immigration court before immigration authorities can remove them. *See Id*. They are statutorily afforded rights and procedural protections, including the right to be represented by counsel of their choice, and the right to present and confront evidence. *See Id*. § 1229(a)(4). They are also entitled to administrative appellate review at the BIA and further judicial review in the federal Courts of Appeals. *See* 8 C.F.R. § 1003.1(b) (BIA); 8 U.S.C. § 1252(a)(5) (Courts of Appeals). While an appeal is pending with the BIA, any decision of the immigration judge is not final, and any effort to remove the subject of the appeal is stayed. 8 C.F.R. § 1003.6(a).

29. Custody determinations for individuals in removal proceedings are governed by 8 U.S.C. § 1226. Under § 1226(a), an individual may be released if he does not present a danger to persons or property and is not a flight risk. *Zadvydas*, 533 U.S. at 690; *Matter of Guerra*, 24 I&N Dec. 37 (BIA 2006). Custody determinations under § 1226(a) are individualized and based on the facts presented in those cases. Unlike § 1226(c) "Detention of Criminal Aliens," which can provide for categorical determinations for detention regardless of flight risk or safety risks, § 1226(a) requires a case-by-case review of facts and circumstances. Further, the mandatory detention provision of § 1225(b)(2) does not apply to people like Petitioner, who have already entered and were residing in the United States at the time they were apprehended.

30. The INA at 8 U.S.C. 1226(a) authorizes the arrest of a noncitizen upon the issuance of an administrative warrant by the Attorney General. In turn, the INA, at 8 U.S.C. § 1357(a)(2), expressly states that noncitizens may only be arrested without a warrant if the immigration official has "reason to believe" that the noncitizen is "in the United States in violation of any such law or regulation [regulating the admission, exclusion, expulsion, or

removal of aliens]," if they are also "likely to escape before a warrant can be obtained for his arrest." *Mountain High Knitting, Inc. v. Reno*, 51 F.3d 216, 218 (9th Cir. 1995).

**Administrative Procedures Act (APA)**

31. The APA provides that an agency acts unlawfully if the action is (1) "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law," (2) "contrary to constitutional right, power, privilege, or immunity," or (3) "in excess of statutory jurisdiction, authority, or limitations, or short of statutory right." 5 U.S.C. § 706(2)(A)–(C). An agency action is arbitrary and capricious when:

> the agency has relied on factors which Congress has not intended it to consider, entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise.

*Motor Vehicle Mfrs. Ass'n of the U.S. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983).

**Administrative Exhaustion**

32. Petitioner is not required to exhaust any other administrative remedies prior to filing this action because no other forum exists in which Petitioner can raise the claims herein. There is no statutory exhaustion requirement prior to challenging the constitutionality of an arrest or detention, or challenging a policy under the APA.

33. Prudential exhaustion is also not required here because it would be futile, and Petitioner will "suffer irreparable harm if unable to secure immediate judicial consideration of his claim." *McCarthy v. Madigan*, 503 U.S. 140, 147 (1992). Any further exhaustion requirements would be unreasonable.

**<u>FACTUAL ALLEGATIONS</u>**

34. Petitioner is a noncitizen native of Nicaragua. Declaration of Gary Aldair Estrada Garache ("Petitioner's Dec."), ¶ 2; Declaration of Patrick A. Martinez ("Martinez Dec."), ¶ 6. On

or around October 15, 2022, he entered the United States without inspection. Petitioner's Dec., ¶ 5; Martinez Dec., ¶ 6. Upon entry, Petitioner was detained by CBP, and he was soon thereafter released on parole. Petitioner's Dec., ¶¶ 7-9; Martinez Dec., ¶ 6. Petitioner was instructed to report to the ICE office nearest where he would be living. *Id.* Since 2022 until his arrest, Petitioner lived primarily in California, specifically in Fresno, San Luis Obispo, and Santa Maria. Petitioner's Dec., ¶ 6; Martinez Dec., ¶ 11-12.

35. On August 16, 2023, Petitioner got married to his wife who is a U.S. citizen. Petitioner's Dec., ¶ 16. Petitioner's wife filed an immigrant relative petition for him which was approved. Martinez Dec., ¶ 7, Exhs. 3, 5. Petitioner filed an adjustment of status application on the basis of his wife's petition, but a final decision has not been made on this application by USCIS. Martinez Dec., ¶ 7, Exh. 4.

36. Petitioner was represented by immigration counsel in his immigration proceedings. Petitioner's Dec., ¶ 20; Martinez Dec., ¶ 7. On June 01, 2026, the immigration judge ordered Petitioner removed, because no applications were filed with the court by Petitioner's immigration counsel. *Id.* Petitioner thereafter filed an appeal with the BIA, and this appeal remains pending. Petitioner's Dec., ¶ 20; Martinez Dec., ¶ 9, Exh. 7.

37. Petitioner was scheduled for an in person check in appointment on July 06, 2026 at the ISAP office in Santa Maria, CA. Petitioner's Dec., ¶ 24; Martinez Dec., ¶ 9. Petitioner was encountered at this check in by ICE. Petitioner's Dec., ¶ 25; Martinez Dec., ¶ 9. ICE informed Petitioner that they were arresting him because he had a final removal order. *Id.* Petitioner explained that he filed an appeal with the BIA which was pending, but the arresting ICE officials explained that they could not see the appeal in their database. *Id.* Petitioner was not given advance notice to bring in proof of pending BIA appeal; he was not given advance notice that ICE intended to arrest him at this ISAP check in, nor an opportunity to contest the arrests efforts; and

he was never provided a warrant for his arrest. Petitioner's Dec., ¶ 25; Martinez Dec., ¶ 9.

38. After being taken into custody at the ISAP office, Petitioner was transported to the ICE office in Santa Maria, CA. Petitioner's Dec., ¶ 27. Petitioner asked to call his wife so that he could ask her to contact his attorney for proof of the pending BIA appeal. *Id.* The arresting ICE officials informed Petitioner that he would get a chance to make a call, but this call was not provided until a point in the day where the ICE office was closed for business. *Id.* That same day, Petitioner was taken to the Camarillo, CA ICE office, then he was moved to Los Angeles, CA, and kept there for a night. Petitioner's Dec., ¶ 28. The following day he was moved to Adelanto ICE processing facility in Adelanto, CA and he remains in detention there. *Id.*

39. Since arresting Petitioner, Respondents have made no individualized determination of Petitioner's dangerousness, flight risk, or immigration history that could justify their infringing his right to remain out of custody. Petitioner's Dec., ¶ 34; Martinez Dec., ¶ 7, Ex 5. Petitioner has no criminal history. Petitioner's Dec., ¶ 31; Martinez Dec., ¶ 8.

40. While in detention, Petitioner is away from his wife and children, which includes a newborn child. Petitioner's Dec., ¶¶ 25-29. He was the primary breadwinner for his household, so he is pained by his inability to be with his family and support them. Petitioner's Dec., ¶¶ 30-39. In custody, Petitioner is kept under poor living conditions, because of the food, facilities, treatment, and resources available. *Id.* Petitioner wants to be out of detention so that he can return to be with his family, and diligently proceed with his immigration case. *Id.*

## CLAIMS FOR RELIEF

### FIRST CAUSE OF ACTION
**Unreasonable Seizure and Unlawful Arrest**
**Pursuant to the Fourth Amendment, the INA, and Applicable Regulations**
**[8 U.S.C. § 1357(a)(2); 8 C.F.R. § 287.8(c)]**

41. Petitioner re-alleges and incorporates by reference each preceding paragraph of this Petition, as fully set forth herein, and further alleges:

42. The Fourth Amendment protects the right of persons present in the United States to be free from unreasonable seizures by government officials. When effecting the arrest of a noncitizen with a final removal order or that of a noncitizen without a removal order, immigration officers are required to have an arrest warrant before making an arrest. 8 C.F.R. § 241.2; 8 C.F.R. § 236.1. Accordingly, immigration officers may make warrantless arrests only if they have "reason to believe" the person is (1) present in violation of law and (2) "likely to escape before a warrant can be obtained for his arrest." INA § 287(a)(2). "[R]eason to believe" is construed as equivalent to probable cause. *United States v. Sanchez*, 635 F.2d 47, 63 n.13 (2d Cir. 1980). Immigration officers must possess the requisite level of suspicion as to both the unlawfulness of a noncitizen's presence and the likelihood of his escape before undertaking a warrantless arrest. 8 C.F.R. § 287.8(c)(2)(i)-(ii); *see also Matter of Chen*, 12 I&N Dec. 603, 605-07 (BIA 1968).

43. When Petitioner was detained by Respondents on July 06, 2026, under the auspices that he had a final removal order, he was never presented with the warrant required for those with a final removal order before he was arrested. Petitioner's Dec., ¶ 25; Martinez Dec., ¶ 9. Therefore, his arrest must be construed as a warrantless arrest. However, Respondents did not have reason to believe that they had grounds to arrest Petitioner without a warrant. At the time of the arrest, Petitioner had a pending appeal with the BIA which was served on Respondents in compliance with EOIR Policy Manual, Part III, Section 2.2. Moreover, in addition to imposing reporting obligations upon Petitioner, Petitioner was also made to wear an ankle bracelet and keep a phone issued by ISAP. Since he was scheduled to appear at the ISAP office for an appointment, Respondents had advanced notice that he would be there, and since their interaction with Petitioner was at the ISAP appointment it was not a chance encounter.

44. Petitioner does not in fact have a final removal order, by virtue of his pending BIA

appeal, and therefore an arrest by Respondents would be regulated by 8 U.S.C. § 1226(a) and its accompanying regulations. *See ANTHONY CASTILLO-HERNANDEZ, Petitioner, v. WARDEN, ADELANTO ICE PROCESSING CENTER, et al., Respondents. Additional Party Names: Adelanto Det. Facility, Dep't of Homeland Sec., Immigr. & Customs Enf't*, No. 5:26-CV-05743-MBK, 2026 WL 3034587, at *3 (C.D. Cal. Oct. 9, 2026). Accordingly, before Respondents could arrest Petitioner, they needed to serve him a Form I-200 warrant. 8 U.S.C. § 1226(a); 8 C.F.R. § 236.1(b). Without a warrant, Respondents needed to have probable cause that Petitioner is subject to removal and is likely to escape before a warrant can be obtained. 8 U.S.C. § 1357(a)(2). This is not supported by the record as articulated above. *See supra* ¶ 44.

45. Unless restrained or enjoined by this Court, Respondents will continue to detain Petitioner unlawfully. Petitioner has no plain, speedy, or adequate remedy at law, and for that reason seeks declaratory and injunctive relief as more fully set forth in the Prayer below. *See Cabrera Argueta v. Chestnut,* No. 1:26-cv-04445-NW, 2026 WL 2664606, at *3 (E.D. Cal. Sept. 10, 2016) (finding that immediate release is the appropriate remedy where petitioner was arrested without an administrative warrant and had no opportunity to challenge his continued detention).

## SECOND CAUSE OF ACTION
### Unlawful Detention Pursuant to the Fifth Amendment
### [Substantive Due Process]

46. Petitioner re-alleges and incorporates by reference each preceding paragraph of this Petition, as fully set forth herein, and further alleges:

47. Substantive due process requires that all forms of civil detention—including immigration detention—bear a "reasonable relation" to a non-punitive purpose. *See Jackson v. Indiana*, 406 U.S. 715, 738 (1972). The Supreme Court has recognized only two permissible non-punitive purposes for immigration detention: ensuring a noncitizen's appearance at immigration proceedings and preventing danger to the community. *Zadvydas*, 533 U.S. at 690–92; *see also Demore*, 538 U.S. at 519–20, 527–28, 31.

48. When Respondents paroled Petitioner in October of 2022, after arresting him near the border, they necessarily determined that he was neither a flight risk or a danger. *See* 8 U.S.C. § 1226(c)(4); 8 C.F.R. §§ 212.5(b), 236.1(c)(8), 1236.1(c)(8); *Matter of Sugay*, 17 I. & N. Dec. 637, 640 (BIA 1981); *Saravia v. Sessions*, 280 F. Supp. 3d 1168, 1176 (N.D. Cal. 2017), *aff'd sub nom*. *Saravia for A.H. v. Sessions*, 905 F.3d 1137 (9th Cir. 2018) ("Release reflects a determination by the government that the noncitizen is not a danger to the community or a flight risk.").

49. Neither of the permitted justifications applies to Petitioner now. Respondents were aware of Petitioner's presence in the United States and his immigration status. When Respondents detained Petitioner, he was subject to ISAP reporting obligations, he was wearing an ankle bracelet, and he was issued a phone to conduct check ins. Furthermore, when Respondents detained Petitioner on July 06, 2026, it was not because Respondents believed he was a flight risk or a danger, but because they erroneously believed that Petitioner had a final removal order. However, up to this point, Petitioner had attended all of his immigration hearings, filed an appeal with the BIA, and for all intents and purposes was diligently proceeding with his immigration court case. After the filing of the BIA appeal there was nothing left for Petitioner to do but file a brief when a due date was assigned and thereafter wait for a decision. *See* EOIR Policy Manual, Part III, Section 3.2. Petitioner also has no criminal history. Therefore, the government cannot suggest there is probable cause, let alone evidence, justifying detaining Petitioner as either a flight risk or a danger.

50. Petitioner's pursuance of immigration relief and an appeal of the immigration judge's decision mitigates any argument that Respondents may have regarding flight risk. *See* *Padilla v. U.S. ICE*, 704 F. Supp. 3d 1163, 1173 (W.D. Wash. 2023) (holding that there is not a legitimate concern of flight risk where plaintiffs have bona fide asylum claims and desire to

remain in the United States). It also bears noting that Petitioner was ordered removed because his immigration counsel failed to file applications for relief before the IJ, and that Petitioner intends to inquire into the possibility of reopening his removal order because of prejudice as a result of his prior counsel's performance. Petitioner has at no point attempted to abandon his case.

51. Because Respondents deprived Petitioner of his liberty despite the lack of materially changed circumstances to justify doing so, Petitioner's detention "lack[s] a valid basis and violate[s] Petitioner['s] right to be free from impermissible government custody." *Valencia Zapata v. Kaiser*, 801 F. Supp. 3d 919, 939 (N.D. Cal. 2025) (finding habeas petitioners have demonstrated "at least a serious question" as to whether their detention violates their substantive due process rights "by failing to serve any valid purpose"). And this is so even if Petitioner allegedly technically violated any ISAP or supervision conditions since his last encounter with Respondents. *See, e.g., A.F.A.M. v. Albarran*, No. 25-cv-10492-AMO, 2025 WL 3752190, at *4 (N.D. Cal. Dec. 22, 2025) ("Courts have repeatedly rejected the argument that ICE can re-detain a noncitizen for technical violations 'without regard to whether that technical violation means that one is a flight risk or danger,'" and collecting cases); *Tinoco,* 2025 WL 3567862, at *1, *6 (alleged violations of supervision conditions did not justify re-detention of noncitizen where "no neutral arbiter . . . has determined whether those facts show that Petitioner is a flight risk or danger to the community"). Here Respondents re-detained Petitioner because they erroneously believed he had a final removal order, although they were served with proof of the appeal as required by law. Respondents' mistake is not a sufficient non-punitive basis to re-detain Petitioner. *See Rodriguez v. Rios*, No. 5:26-CV-03462-AH-SSC, 2026 WL 1999905, at *1 (C.D. Cal. July 2, 2026). There were no reporting obligations violations since the last encounter Petitioner had with Respondents.

52. Petitioner is neither a flight risk nor a danger to the community. Respondents' detention of Petitioner is therefore unjustified and unlawful. Accordingly, Petitioner is being detained in violation of the Due Process Clause of the Fifth Amendment, and his release is warranted. *See KENNY RENE SALAZAR-MEDINA, Petitioner, v. MARKWAYNE MULLIN ET AL, Respondents.*, No. 5:26-CV-05799-MAR, 2026 WL 3153162, at *6 (C.D. Cal. Oct. 21, 2026); *see also Nazarian v. Noem*, 2025 WL 3236209, at *7 (C.D. Cal. Nov. 3, 2025).

## <u>THIRD CAUSE OF ACTION</u>

**Unlawful Detention Pursuant to the Fifth Amendment**

**[Procedural Due Process]**

19. Petitioner re-alleges and incorporates by reference each preceding paragraph of this Petition, as fully set forth herein, and further alleges:

20. The procedural component of the Due Process Clause of the Fifth Amendment prohibits the government from imposing even permissible physical restraints without adequate procedural safeguards. "In the context of immigration detention, it is well-settled that due process requires adequate procedural protections to ensure that the government's asserted justification for physical confinement outweighs the individual's constitutionally protected interest in avoiding physical restraint." *Hernandez*, 872 F.3d at 990.

21. Petitioner has a fundamental interest in liberty and being free from official restraint. Furthermore, noncitizens that were previously released from custody have a protected liberty interest in remaining out of custody, since the decision to release them provides an implicit promise that they will not be re-detained unless they fail to live up to the conditions under which they were initially released. *Ramos-Maldonado v. Semaia*, No. 26-cv-01202-SSS-AS, 2026 WL 790788, at *2, 2026 U.S. Dist. LEXIS 57088, at *6-7 (C.D. Cal. Mar. 18, 2026); *see also Domingo v. Kaiser*, No. 25-cv-05893, 2025 WL 1940179, at *2, 2025 U.S. Dist. LEXIS 133824 at *5-6 (N.D. Cal. July 14, 2025) (collecting cases). "Even assuming petitioner was not previously released at the discretion of immigration officials,[ ] he has a general liberty interest in freedom

from detention." *Rivas Garcia v. Current or Acting Field Dir.*, No. 1:26-cv-03245 DAD SCR, 2026 WL 1265937, at *4 (E.D. Cal. May 8, 2026).

22. It is clear that Petitioner was subject to 8 U.S.C. § 1226(a) while his appeal with the BIA remains pending. Accordingly, at minimum, if Respondents sought to detain him, they were required to conduct a prompt custody review, and if they determined that detention was appropriate, they needed to provide Petitioner an opportunity to request a bond hearing for IJ review of the custody determination. *CASTILLO-HERNANDEZ*, No. 5:26-CV-05743-MBK, 2026 WL 3034587, at *5 (C.D. Cal. Oct. 9, 2026); *See generally* 8 C.F.R. §§ 241.4(l)(1), 241.13(i)(3). Respondents were also required to, "provide written justification for a decision to detain and 'create[] a record that permits meaningful review of whether the required procedure occurred." *Id.* The initial custody determination also has the dual function of serving to advise those in Petitioner's position of the possibility of seeking review by an IJ and an opportunity to request such a review. *Id.* However, Petitioner herein was not afforded an individualized custody determination before he was detained, he was not apprised in writing of the reasons for his detention, he was not notified of the possibility of IJ review, or given an opportunity to request such review. This failure on behalf of Respondents is a violation of Petitioner's procedural due process rights. *CASTILLO-HERNANDEZ*, No. 5:26-CV-05743-MBK, 2026 WL 3034587, at *5 (C.D. Cal. Oct. 9, 2026).

23. Petitioner was charged in his notice to appear as an entrant lacking admission or parole. Martinez Dec., ¶ 6, Exh. 1. Petitioner's continued detention since July 06, 2026 without a bond determination hearing seemingly suggests that Respondents held him in custody under 8 U.S.C. § 1225(b)(2)(A). Although Respondents may be inclined to posit that Petitioner can request bond redetermination hearing under 8 U.S.C § 1226(a) pursuant to *Rodriguez Vazquez v. Bostock*, 183 F.4th 1160 (9th Cir. 2026). *Rodriguez Vazquez* was decided on July 30, 2026, and

Petitioner was detained by Respondents on July 06, 2026. Respondents' detention of Petitioner without a bond determination hearing to determine whether he presents a flight risk or danger to others—or other ability to challenge his detention before a neutral adjudicator—violates his constitutional right to procedural due process under the Fifth Amendment.

24. Finally, "the Due Process Clause of the Constitution may require greater procedural protections than a statutory or regulatory scheme provides when freedom from imprisonment is at stake." *Perez Bueno v. Janecka*, No. 25-cv-03376-CAS-BFM, 2026 WL 309934, at *3, 2026 U.S. Dist. LEXIS 24644, at *7 (C.D. Cal. Feb. 5, 2026). To determine what procedural protections an individual is owed in the event of a government deprivation of a protected liberty interest, Courts, then, routinely balance three factors: (a) the private interest that will be affected by the official action; (b) the risk of an erroneous deprivation of such interest and the value of additional procedural safeguards; and (c) the countervailing government interest. *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976). As noted above, Petitioner has a liberty interest which is strengthened by the fact that he was previously released from Respondents' custody. *Ramos-Maldonado v. Semaia*, No. 26-cv-01202-SSS-AS, 2026 WL 790788, at *2, 2026 U.S. Dist. LEXIS 57088, at *6-7 (C.D. Cal. Mar. 18, 2026). Absent additional procedural safeguards, such as at a pre-deprivation hearing, where Respondents can show there are changed circumstances warranting re-detention, and where Petitioner could prepare adequately and respond, there is a high risk of an erroneous deprivation of liberty. *ZULMY REVOLORIO RAMIREZ, Petitioner, v. JOSHUA JOHNSON, Respondent.,* No. 5:26-CV-03691-KES, 2026 WL 2547407, at *4 (C.D. Cal. Aug. 28, 2026). Finally, there is no significant countervailing government interest in detention without a pre-detention hearing of those, like Petitioner, who have previously been released, and the burden upon the government to provide such a hearing is

low. *Id.* As the balance of these factors is favorable to Petitioner, due process required that Petitioner receive a pre-deprivation hearing before being re-detained.

25. Unless restrained or enjoined by this court, Respondents will continue to detain Petitioner unlawfully. Petitioner has no plain, speedy, or adequate remedy at law, and for that reason seeks declaratory and injunctive relief as more fully set forth in the Prayer below. *See E.A. T.-B. v. Wamsley*, 795 F. Supp. 3d 1316, 1324 (W.D. Wash. 2025) ("Although the Government notes that Petitioner may request a bond hearing while detained, such a post-deprivation hearing cannot serve as an adequate procedural safeguard because it is after the fact and cannot prevent an erroneous deprivation of liberty."); *see also Domingo v. Kaiser*, No. 25-CV-05893 (RFL), 2025 WL 1940179, at *3 (N.D. Cal. July 14, 2025) ("Even if Petitioner[ ] received a prompt post-detention bond hearing under 8 U.S.C. § 1226(a) and was released at that point, he will have already suffered the harm that is the subject of his motion: that is, his potentially erroneous detention."). "[I]mmediate release from custody is the only means to provide complete relief to Petitioner." *Aguilar*, 2026 WL 1196090, at *4.

## FOURTH CAUSE OF ACTION

**Unlawful Detention Pursuant to the INA, Applicable Regulations, APA, and Accardi Doctrine**

**[8 U.S.C. § 1226(a); 8 C.F.R. § 1236.1(c)(9); 8 C.F.R. 1003.6(a); 5 U.S.C. § 706(2)]**

26. Petitioner re-alleges and incorporates by reference each preceding paragraph of this Petition, as fully set forth herein, and further alleges:

27. The Administrative Procedure Act ("APA") prohibits federal action that is "in excess of statutory jurisdiction, authority or limitations, or short of statutory right," 5 U.S.C. § 706(2)(C), or that is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." *Id.*, § 706(2)(A).

28. An action is an abuse of discretion if the agency "entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the

evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise." *Nat'l Ass'n of Home Builders v. Defs. of Wildlife*, 551 U.S. 644, 658 (2007) (quoting *Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983)).

29. To survive an APA challenge, Respondents must articulate "a satisfactory explanation" for their actions, "including a rational connection between the facts found and the choice made." *Dep't of Com. v. New York*, 588 U.S. 752, 773 (2019) (citation omitted). Further, under the APA, a court "shall . . . hold unlawful . . . agency action" that is "not in accordance with law;" "contrary to constitutional right;" "in excess of statutory jurisdiction, authority, or limitations;" or "without observance of procedure required by law." 5 U.S.C. § 706(2)(A)-(D).

30. The Supreme Court has long recognized that government agencies are required to follow their own procedures. *See United States ex rel. Accardi v. Shaughnessy*, 347 U.S. 260, 268 (1954). Courts have regularly applied this principle to the immigration context. *See, e.g., Alcaraz v. I.N.S.*, 384 F.3d 1150, 1162 (9th Cir. 2004). The Accardi doctrine extends beyond just "regulations" to include, e.g., "internal operating procedures," "handbook[s]," "policy statements," and other evidence of an agency's "usual practice." *Id.*

31. First, Respondents failed to follow their own procedures when they arrested Petitioner without a warrant. Furthermore, they did not have the requisite level of evidence to justify a warrantless arrest of Petitioner.

32. Additionally, Respondents have arbitrarily and capriciously detained Petitioner without the individualized exercise of discretion required by law. By detaining Petitioner without consideration of his unique facts and circumstances, Respondents have violated the APA. By detaining Petitioner categorically, Respondents have further abused their discretion because there have been no changes to his facts or circumstances that could justify immigration detention.

Petitioner is therefore unlawfully held in custody in violation of his statutory and due process rights to a pre-deprivation hearing, which Respondents have failed to provide.

33. The mandatory detention provision at 8 U.S.C. § 1225(b)(2) does not apply to noncitizens residing in the United States who are subject to the grounds of inadmissibility because they previously entered the country without being admitted or paroled. Such noncitizens are detained under § 1226(a), unless they are subject to another detention provision, such as § 1225(b)(1), § 1226(c), or § 1231. Petitioner's detention is governed by INA § 1226(a).

34. Finally, noncitizens in removal proceedings, like Petitioner, are entitled to administrative appellate review at the BIA and further judicial review in the federal Courts of Appeals. *See* 8 C.F.R. § 1003.1(b). When a noncitizen files an appeal of the IJ's decision, they are required to provide serve Respondents with the appeal materials filed. EOIR Policy Manual, Part III, Section 2.2. While an appeal is pending with the BIA, any decision of the immigration judge is not final, and any effort to remove the subject of the appeal is stayed. 8 C.F.R. § 1003.6(a). Petitioner timely filed an appeal of the IJ's decision, served Respondents with a copy of the appeal materials as required by law, and his appeal remains pending with the BIA. Nevertheless, Respondents detained Petitioner on July 06, 2026, indicating that they believed he had a final removal order because they had no proof of his appeal.

35. Unless restrained or enjoined by this court, Respondents will continue to detain Petitioner unlawfully. Petitioner has no plain, speedy, or adequate remedy at law, and for that reason seeks declaratory and injunctive relief as more fully set forth in the Prayer below. *See KENNY RENE SALAZAR-MEDINA, Petitioner, v. MARKWAYNE MULLIN ET AL, Respondents.*, No. 5:26-CV-05799-MAR, 2026 WL 3153162, at *5 (C.D. Cal. Oct. 21, 2026) ("Petitioner has suffered an irreparable injury by being detained in violation of the INA…").

**PRAYER FOR RELIEF**

WHEREFORE, Petitioner respectfully requests this Court take jurisdiction over this matter and grant the following relief:

1. Order that Petitioner shall not be transferred outside of the Central District of California while this Petition is pending;
2. Declare that Petitioner's detention is unlawful, in violation of his constitutional rights to procedural and substantive due process and the Administrative Procedures Act, and governed by 8 U.S.C. § 1226(a), such that detention under § 1225(b)(2) cannot be justified;
3. Issue a Writ of Habeas Corpus requiring Respondents to:
    a. Release Petitioner from ICE detention immediately;
    b. Refrain from re-detaining Petitioner until and unless Respondents have provided him with a pre-deprivation hearing adhering to due process, including but not limited to by requiring Respondents to bear the burden before a neutral decisionmaker to demonstrate via clear and convincing evidence that re-detention of Petitioner is both necessary to prevent danger to the community and his flight;
    c. Require Respondents to ensure that Petitioner is returned immediately to Santa Maria, California, by the most efficient means of public or private transport, that he be physically unrestrained, and that he be supplied with any needed personal items, and adequate food, during that trip, all at no cost to himself;
    d. Relieve Petitioner of any obligation to pay an "inadmissible alien apprehension fee" pursuant to 8 U.S.C. § 1815(b).
4. Issue an Order to Show Cause requiring Respondents to demonstrate within three days why this Petition should not be granted;

5. Retain jurisdiction over this matter to facilitate prompt enforcement of this Court's order(s);
6. Award attorneys' fees and costs pursuant to the Equal Access to Justice Act, 28 U.S.C. § 2412, and/or any other bases justified under law; and
7. All other relief this Court deems to be just and proper.

Dated: October 14, 2026

Respectfully submitted,

***/s/ Patrick Martinez***
Patrick Martinez
Attorney for Petitioner

**VERIFICATION**

I, Patrick Martinez, declare as follows:

1. I am attorney in good standing licensed by the State of California and admitted to practice before this Court.
2. Because many of the allegations of this Petition require legal knowledge not in Petitioner's possession, I am making this verification on his behalf.
3. Petitioner's signed and sworn declaration, filed concurrently with this Petition, verify the factual allegations underlying this Petition.
4. I have read the foregoing Petition and know to the best of my knowledge, information and belief its contents to be true, and on that basis declare them to be true.

I declare under penalty of perjury of the State of California that the following is true and correct and that this declaration was executed on October 14, 2026, in Oxnard, California.

***/s/ Patrick Martinez***
Patrick Martinez